UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DISTRICT COUNCIL NO. 7
and LOCAL UNION NO. 781, INTERNATIONAL UNION
OF PAINTERS AND ALLIED TRADES, AFL-CIO,

                Plaintiffs,

                                    Case No. 20-cv-912-pp

    v.

PEPPER CONSTRUCTION CO.,

                Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE SUR-REPLY (DKT. NO. 49), DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21), GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23), STAYING CASE PENDING ARBITRATION AND CLOSING CASE FOR ADMINISTRATIVE PURPOSES**

The plaintiffs, District Council No. 7 and Local Union 781, sued to compel defendant Pepper Construction Company to arbitrate a dispute regarding whether the defendant violated the subcontracting provision of a collective bargaining agreement. Dkt. No. 1. The defendant says that it cannot be compelled to arbitrate a dispute under a collective bargaining agreement that it "never received, never negotiated and never signed." Dkt. No. 22 at 5. Both parties have moved for summary judgment. Dkt. Nos. 21, 23. The defendant has asked to file a sur-reply brief in opposition to the plaintiff's summary judgment motion. Dkt. No. 49.

The court will deny the defendant's motion for leave to file a sur-reply, grant the plaintiffs' motion for summary judgment, deny the defendant's

motion for summary judgment, enter a stay pending arbitration and close the case for administrative purposes.

## I. Defendant's Motion to File a Sur-Reply in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 49)

### A. The Parties' Arguments

After the parties had fully briefed their respective motions for summary judgment, the defendant filed a motion for leave to file a sur-reply brief in opposition to the plaintiff's summary judgment motion. Dkt. No. 49. It argued that the plaintiffs had waited until their reply brief to cite to a "Model Collective Bargaining Agreement (Construction) for the Finishing Industries" and "Painters & Allied Trades LMCI Guidebook for Collective Bargaining Industries, jointly created by the Finishing Contractors Association and [International Union of Painters and Allied Trades, AFL-CIO]." Id. at 1. The defendant argues that there is good cause for the court to allow it to file a sur-reply because the guidebook is directly related to a significant issue in the parties' briefing: whether the decisions of foreign jurisdictions are based on materially different negotiations and contracts. Id. at 2. The defendant asserts that it is only fair to grant the motion because it twice agreed to giving the plaintiffs extensions. Id. In the sur-reply brief attached to the motion, the defendant asserts that the plaintiffs failed to produce the guidebook during discovery even though it was directly responsive to the defendant's subpoena. Dkt. No. 49-1 at 2. It further argues that the guidebook is not properly authenticated, constitutes inadmissible hearsay and post-dates at least one of the collective bargaining agreements at issue. Id. at 3, 4.

2

The plaintiffs oppose the motion, arguing that the guidebook is directly responsive to a false statement made by the defendant (that one of the cases the defendant cites in support of its arguments was modeled on a national framework, while the defendant's collective bargaining agreements allegedly were not). Dkt. No. 50 at 1, 2. According to the plaintiffs, the documents rebut the defendant's assertion that the plaintiff had no evidentiary support for its position. Id. The plaintiffs say they didn't fail to produce the guidebook in discovery, because the defendant's discovery requests focused on the agreements at issue and not a master form agreement. Id. at 5. They assert that if they did fail to produce the guidebook, any mistake was harmless because they are using the guidebook only to establish that the defendant's arguments are untrue. Id. at 6. Finally, the plaintiffs say that the guidebook can properly be authenticated. Id. at 6. Alternatively, the plaintiffs say the guidebook is admissible as a record kept in the ordinary course of business. Id.

B.    The Parties' Pleadings

In the three months between the date the defendant filed its motion for summary judgment and the date it asked leave to file a sur-reply brief, the parties filed twenty-six pleadings containing almost 850 pages. The case has been fully—arguably *over*—briefed, and for the reasons the court explains below, a sur-reply is not necessary. The court recounts what happened here, however, in the hope that these parties and others will consider simplifying their approach to summary judgment.

3

Civil Local Rule 56(b)(1) (E.D. Wis.) requires a party moving for summary judgment to file a supporting memorandum of law, a statement of any material facts to which all the parties have stipulated, a statement of the proposed material facts which the moving party contends are undisputed and entitle it to judgment as a matter of law and any affidavits, declarations or other supporting materials.

Both parties followed this rule:

Plaintiffs                           Defendant

SJ motion—Dkt. No. 23               SJ motion—Dkt. No. 21
SJ brief—Dkt. No. 24                SJ brief—Dkt. No. 22
PFOF—Dkt. No. 25                    PFOF—Dkt. No. 27
Declarations—Dkt. Nos. 26, 28, 29   Declarations—Dkt. Nos. 30-33

Civil L.R. 56(b)(2) allows the party opposing the motion to file a supporting memorandum of law, concise responses to each of the moving party's proposed findings of fact and opposing affidavits, declaration and other materials. The non-moving party's response to the moving party's proposed findings of fact may include a statement of no more than 100 additional facts which require denial of summary judgment. The defendant followed, and the plaintiffs sort of followed, this rule:

Plaintiffs                           Defendant

Opposition brief—Dkt. No. 36        Opposition brief—Dkt. No. 34
PFOF response—Dkt. No. 38           PFOF response—Dkt. No. 35
Supp. PFOF—Dkt. No. 37
Declaration—Dkt. No. 39

The plaintiffs' supplemental statement of facts is incorrectly and misleadingly titled "Supplemental Statement of Undisputed Facts in Opposition

4

to *Plaintiff's* Motion for Summary Judgment." Dkt. No. 37 at 1 (emphasis added). It is the *plaintiffs'* supplemental statement of undisputed facts in opposition to the *defendant's* motion for summary judgment. And while Civil L.R. 56(b)(2) allows an opposing party's response to the moving party's findings of fact to include a statement of additional proposed facts by the non-moving party, it anticipates that those additional proposed findings will be *included* in the non-moving party's response to the moving parties proposed findings of fact, not filed as a separate document. The plaintiffs' pleading states ten additional proposed findings of fact. Dkt. No. 27 at ¶¶78-87. The defendant followed the procedure anticipated by the rule; at the end of its response to the plaintiff's proposed findings of fact, the defendant included forty-eight additional proposed findings of fact. Dkt. No. 35 at ¶¶62-109.

Finally, Civil L.R. 56(b)(3) allows the moving party to file a reply memorandum, a reply to any additional facts provided by the non-moving party and any affidavits, declarations or other supporting materials. While, as allowed by Rule 56(b)(3), the defendant filed a reply to the ten additional proposed findings of fact the plaintiff had filed (Dkt. No. 37), the *plaintiffs* filed a forty-two-page document oddly titled "Defendant's Response to Plaintiffs' Proposed Findings of Fact." Dkt. No. 45. The final pages of the document contain an additional twelve supplemental proposed findings of fact from the plaintiffs. Id. at ¶¶110-122. It is in these additional supplemental proposed findings of fact—the *second* set of supplemental proposed findings of fact that the plaintiffs have filed—that the plaintiffs proposed facts relating to the

5

guidebook. The plaintiffs' reply brief relies on this second set of supplemental proposed findings of fact and quotes extensively from the guidebook. Dkt. No. 44 at 5-7. The plaintiffs also filed with their reply brief a supplemental declaration from Jeff Mehrhoff (identified in an earlier declaration as the business manager/secretary treasurer of plaintiff Painters District Council 7, dkt. no. 26), explaining where the guide had come from and what it contained. Dkt. No. 47. The plaintiffs also attached to Mehrhoff's supplemental declaration four pages of the guide. Dkt. No. 47-1.

The plaintiffs appear to be under the impression that Civil L.R. 56 authorizes a cycle of responses containing additional facts/replies to those facts plus additional facts/replies to *those* additional facts plus additional facts, *ad infinitum*. The plaintiffs are mistaken. The second set of supplemental facts in Dkt. No. 45 were not authorized by the rule.

C.    Analysis

The defendant seeks to file a sur-reply to address the plaintiffs' unauthorized second set of supplemental facts, the reply brief's arguments relying on those facts and the supplemental declaration and pages of the guide. Their request is understandable, and fairness would warrant the court granting the request *if* the additional facts and arguments had any persuasive effect on the court. They do not.

Mehrhoff's supplemental declaration says nothing more than that he received a copy of the guidebook from someone with the Painters and Allied Trades Labor-Management Cooperation Initiative. Dkt. No. 47. The

6

supplemental declaration doesn't say who gave Mehrhoff the guide, when he received it, when it was created, who created it or why it was given to him. Courts can consider unauthenticated documents at the summary judgment stage if they can be authenticated at trial, Olson v. Morgan, 750 F.3d 708, 714 (7th Cir. 2014), but the plaintiffs did not bother to attach the guidebook to Mehrhoff's supplemental declaration. The plaintiffs attached only four pages of the guidebook—numbered one through four—which appear to include the first four pages of the explanation and analysis of the model collective bargaining agreement. The plaintiffs' second set of supplemental proposed findings of fact, on the other hand, cites to pages 2, 4, 9, 11, 12 and 15-22 of the guidebook— pages the plaintiffs did not provide the court. Dkt. No. 45 at 38.

The plaintiffs filed an additional, unauthorized set of supplemental proposed findings of fact, did not properly support those findings, did not provide the court with a copy of the pages to which they were citing and thus did not provide the court with any evidence it could use to resolve the summary judgment motions. Under those circumstances, there is no need for a sur-reply brief. The court will deny the motion.

## II. The Parties' Motions for Summary Judgment (Dkt. Nos. 21, 23)

### A. Legal Standard

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. Khungar v. Access Cmty. Health Network, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility

7

determinations on summary judgment because those tasks are left to the fact-finder. Miller v. Gonzalez, 761 F.3d 822, 827 (7th Cir. 2014). The court is required to consider only the materials cited by the parties, see Federal Rule of Civil Procedure 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. Grant v. Trs. of Ind. Univ., 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. Valenti v. Lawson, 889 F.3d 427, 429 (7th Cir. 2018) (citing Tripp v. Scholz, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO, 335 F.3d 643, 647 (7th Cir. 2003).

8

B.  Findings of Fact

As mentioned above, the court has struggled to make sense of how the plaintiffs organized their proposed findings of fact. As discussed, the plaintiffs docketed a response to the defendant's findings of fact that is titled "Defendant's Response to Plaintiff's Proposed Findings of Fact." Dkt. No. 45. That document included the second, unauthorized set of supplemental proposed findings of fact, numbered 110 through 122. Id. at 38-41. The defendant has not formally responded to these proposed findings (likely because the defendant knew they were not authorized by the rule) and the court has decided that no additional briefing is necessary. The plaintiffs' proposed supplemental findings cite to Mehrhoff's supplemental declaration. Id.; Dkt. No. 47. That is the same declaration that the court referenced when discussing defendant's motion to file a sur-reply brief. The plaintiffs' citations to the record do not match the actual exhibit and the supplemental findings provide the court with no context as to how, when or who prepared the guidebook (or whether it predated the relevant agreements). Dkt. No. 47-1. Given these irregularities, the court has considered only proposed findings authorized by the local rules and properly supported by record evidence.

The court notes that its recitation of facts is laden with long, block quotes from various collective bargaining agreements—not easy or engaging reading. Because the complaint seeks enforcement of only a single provision of a single agreement—an arbitration clause—one would be forgiven for wondering why the court has burdened the reader with the remaining reams of

9

dense, contractual language. As the analysis will show, the defendant has argued that because it was not a signatory to the agreement that contains the arbitration clause, it is not bound by the arbitration clause. The answer to that question requires consideration of how three, separate collective bargaining contracts interrelate.

       1.   *Parties*

Plaintiff District Council No. 7 is a labor organization based in Big Bend, Wisconsin, and is an affiliate of the International Union of Painters and Allied Trades (IUPAT). Dkt. No. 1 at 1, Dkt. No. 30-2 at 3-4, Tr. Page 21 line 25, Tr. Page 22 lines 1-3. District Council No. 7 acts on behalf of several local unions within its territorial jurisdiction on all matters, including negotiating and administering collective bargaining agreements. Dkt. No. 26 at ¶4. Plaintiff Local 781 is one of the local unions subordinate to, affiliated with and within the geographic jurisdiction of District Council 7, and on whose behalf District Council 7 is authorized to act. Id. The "geographic jurisdiction" of Local Union 781 includes the Wisconsin Counties of Jefferson, Milwaukee, Ozaukee, Washington and Waukesha. Dkt. No. 30-3 at 4.

District Council 7, along with the appropriate local union, has been party to various collective bargaining agreements with independent employers and industry employer associations throughout Wisconsin and the upper peninsula of Michigan. Dkt. No. 26 at ¶5. It acts as the exclusive bargaining representative for employees of certain employers engaged in painting and drywall installation and finishing work throughout the state of Wisconsin,

including the metropolitan Milwaukee area and surrounding counties of Ozaukee, Waukesha, Jefferson and Washington. Id. at ¶ 6.

Defendant Pepper Construction is a family-owned general contractor based in Chicago, Illinois. Dkt. No. 33 at ¶3. On corporate records filed with the Wisconsin Department of Financial Institutions, the defendant maintains its principal office address as Pepper Construction Company, 411 Lake Zurich Road, Barrington, Illinois 60010. Id. at ¶4. During the relevant period, the defendant also had an office in Milwaukee, Wisconsin, but was not based in Milwaukee. Dkt. No. 29-1 at ¶3. The defendant serves clients in the construction industry throughout the Midwest, including in Illinois, Ohio, Indiana and Wisconsin, and across the United States. Dkt. No. 33 at ¶5. The defendant oversees the construction of wide-ranging commercial and residential projects that include entertainment venues, healthcare facilities, retail businesses and senior living communities. Id. at ¶6.

The defendant negotiated with District Council No. 14 in Illinois, but not District Council No. 7 in Wisconsin. Dkt. No. 29-1 at ¶15; Dkt. No. 33 at ¶9. District 14's geographic jurisdiction—with respect to its collective bargaining agreements with the Midwest Wall and Ceiling Contractors (MWCC) and the Finishing Contractors Association of Chicago (FCAC)—includes the Illinois counties of Lake, Cook, Will and Grundy. Dkt. Nos. 30-4; 31-1 at 1, 8.

At all relevant times, the defendant has been a member of MWCC (formerly known as GDCNI/CAWCC) and the FCAC (also known as the Painting & Decorating Contractors Association, Chicago Council). Dkt. No. 33 at ¶¶7, 8;

Dkt. No. 32 at ¶3; Dkt. No. 31 at ¶3. Both the MWCC and the FCAC operate as contractor associations that negotiate collective bargaining agreements with Chicago-area district councils of the Painters International on behalf of its members who give them the authority to negotiate on their behalf. Dkt. No. 32 at ¶2; Dkt. No. 31 at ¶ 4. The defendant has given MWCC and FCAC authority to bargain on its behalf for purposes of collective bargaining agreement negotiations with District Council No. 14. Dkt. No. 33 at ¶¶7, 8.

        2.     *The Three Relevant Collective Bargaining Agreements*

                a.    District Council No. 7's Collective Bargaining
                       Agreement ("the Milwaukee-area Agreement")

The plaintiffs—District Council No. 7 and its local 781—have an agreement with the Wisconsin Painting Contractors' Association and the Southeastern Wisconsin Drywall Contractors' Association for the area in and around Milwaukee (Milwaukee-area Agreement). Dkt. No. 26-1. That agreement was in effect from June 11, 2018, through May 31, 2021. Id. at 1. The parties that executed the Milwaukee-area Agreement include: plaintiff District Council. No. 7, the Wisconsin Painting Contractors Association and the Southeastern Wisconsin Drywall Painting and Plastering Contractors Association. Id. at 3. The agreement describes the "geographic jurisdiction" of the union—the plaintiffs—as Milwaukee, Ozaukee, Waukesha, Jefferson and Washington Counties in Wisconsin. Id. at 4. Work performed outside that geographic region is referenced as "out-of-area." Id. There is no dispute that the defendant is not a signatory to this agreement, or that the defendant is based in Chicago, which is outside the geographic area of the Milwaukee-area Agreement.

12

The Milwaukee-area Agreement applies to "all employees performing the work of journeypersons or apprentices in the classification of 'painter' and 'drywall finisher'" for the Employer." Id. at 3. "Employer" is defined as the "the Wisconsin Painting Contractor's Association and Southeastern Wisconsin Drywall Contractors' Association." Id. The plaintiffs are the "union" parties to the contract. Id. The Milwaukee-area Agreement also "applies to all employees performing any trade jurisdiction work identified and described in this Article." Id. The Milwaukee-area Agreement defines covered work as including, but not limited to, "preparation, application and removal of all types of coatings and coating systems in relation to all painting, decorating [and] protective coatings" on various surfaces and related preparatory work; wall covering work and related preparatory work; and drywall finishing work, including preparation, leveling and finishing of various surfaces. Id. at 3-4.

The out-of-area jurisdiction provision in Article 3 of the Milwaukee-area Agreement states as follows:

### ARTICLE 3
### Out-of-Area Jurisdiction

The geographic jurisdiction of the Union party to this Agreement is for the counties of Milwaukee, Ozaukee, Waukesha, Jefferson and Washington Counties, State of Wisconsin.

**Section 1.** The Contractor or the Employer party to this agreement, when engaged in work outside the geographical jurisdiction of District Council No. 7, shall employ not less than fifty percent (50%) of the workers employed on such work from among the residents of the area where the work is performed, or from among persons who are employed the greater percentage of their time in such area; provided that the first employee on any such job or project shall be selected by the Employer from any geographic jurisdiction.

13

**Section 2.** The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to the Agreement, comply with all of the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction and executed by the Employers of the industry and the IUPAT affiliated Local Unions in that jurisdiction, including, but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievances set forth therein; provided, however, that where no affiliated Union has a current effective Agreement covering such out-of-area work, the Employer shall perform such work in accordance with this Agreement; and provided, further, that as to employees employed by such Employer from within the geographic jurisdiction of the Union party to this Agreement and who are brought into an outside jurisdiction, such employees shall be entitled to receive the wages and conditions including fringe benefits effective in either the home or outside jurisdiction, whichever are more favorable to such employees. . . .

Dkt. No. 26-1 at 4.

The plaintiffs claim that the defendant violated Article 24 of the

Milwaukee-area Agreement, which states as follows:

## Subcontracting

Section 1. The Employer shall not contract out, subcontract, or outsource work to be done at the site of the construction, alteration, painting, or repair of a building or structure or other work unless the Employer or person who will perform such work is a party to a Collective Bargaining Agreement with this Union or another Union affiliated with the IUPAT.

Section 2. Subcontracting by Employees. No employee of the Employer shall do any contracting or subcontracting at any time. Any employee who violates this provision will pay whatever fines that are determined by the Union. All fines of all union members will be determined solely by District Council 7. This section shall in no way conflict with the by-laws or the General Constitution of the International Union of Painters and Allied Trades, AFL-CIO.

Dkt. No. 26-1 at 26.

The Milwaukee-area Agreement contains provisions dictating how parties

must resolve disputes. Dkt. No. 26 at ¶12; Dkt. No. 26-1 at 12-13. It provides

14

for final and binding resolution of grievances via a joint trade board composed of six members—three appointed by the Union and three appointed by the Employer. Id. The pertinent arbitration clauses—the bases for the plaintiffs' motion to compel and thus for this lawsuit—is found in Article 11, Sections 2 and 3:

**ARTICLE 11**
**Dispute Resolution**

. . . .

2) The parties to this Agreement hereby agree that any and all grievances and disputes which arise between them or between employees covered by this Agreement and the Employer, concerning the interpretation or application of this Agreement shall be submitted to the Joint Trade Board for final and binding resolution in accordance with the provisions set forth in this Article.

3) The Joint Trade Board is empowered to hear and decide all grievances and disputes which arise between the parties as to the interpretation or application of this Agreement; to award or assess remedies, damages, and penalties for violations of this Agreement; to issue interpretative rulings or other rules and regulations as it deems necessary to give force and effect to the purpose and intent of this Agreement; to investigate all grievances and disputes submitted to it, including the conduct of audits of Employer records; to recommend amendments to or changes in this Agreement, but only upon request of both parties; to appoint such persons or committees as may be necessary to aid the Board in the performance of its duties; and to demand of Employers who repeatedly violate this Agreement the posting of a cash or surety bond to assure future compliance.

Dkt. No. 26-1 at 13.

The defendant never has been a party to a collective bargaining agreement with plaintiff District Council No. 7. Dkt. No. 26 at ¶10; Dkt. No. 30-2 at 2, Tr. Page 20 lines 22-25. The defendant never has granted bargaining authority to any contractor association to negotiate a collective bargaining

15

agreement with District Council No. 7. Dkt. No. 33 at ¶9; Dkt. No. 30-2 at 3, Tr. Page 21 at lines 6-24. The defendant never has directly negotiated or executed a collective bargaining agreement with District Council No. 7. Dkt. No. 33 at ¶10. When asked to identify the defendant's employees who are represented by District Council No. 7 (at any time during their employment), District Council No. 7 identified Gerardo Gomez Manriguez and Nathan Torres. Dkt. No. 30-10 at 10-11. These individuals, however, are members of District No. 14—not District Council No. 7. Dkt. No. 30-2 at 39-40, Tr. Page 162 lines 20-25; Tr. Page 163 line 1, lines 15-20.

       b.     District Council No. 14 Collective Bargaining Agreements (the "FCAC" and "MWCC" Agreements)

District Council No. 14 is a labor organization based in Chicago, Illinois, affiliated with the International Union of Painters and Allied Trades, AFL-CIO. Dkt. No. 28 at ¶3. District Council 14 employees are engaged in or performing painting, drywall and finishing work. Dkt. No. 26 at ¶15. District Council No. 14's geographic jurisdiction with respect to its collective bargaining agreements at issue includes Lake, Cook, Will and Grundy counties in Illinois. Dkt. No. 31-1 at 14. District Council No. 14 is *not* a party to this lawsuit.

       i.    **The FCAC Agreement**

The defendant assigned its bargaining to the Finishing Contractors Association of Chicago (FCAC) for the purpose of negotiating a collective bargaining agreement with District Council No. 14. Dkt. No. 33 at ¶8. The FCAC and District Council No. 14 negotiated and executed a collective bargaining agreement effective for the period of June 1, 2017, through May 31,

16

2021 (FCAC Agreement). Dkt. No. 31-1 at 1. The FCAC Agreement established the hours of work, rates of pay and overtime and working conditions for those performing work for the Employers. Id. at 15-19, 32-36. The defendant is an "Employer" as defined in Article 2, id. at 8, and agrees that it is bound by the FCAC Agreement, dkt. no. 35 at ¶26.

Article 1 of the FCAC Agreement states, in pertinent part:

**ARTICLE 1**
**OBJECTS**

The objects of this Agreement, and the aims and intentions which all parties are desirous of attaining are:

> . . . .

(d) To raise the standards of the Painting Industry in the City of Chicago, Cook, Lake, Will and Grundy Counties, Illinois, and in whatever additional jurisdiction as may hereafter be awarded to the Union, so that it may command the respect and increased patronage by the public by giving it the highest quality of work at fair and reasonable prices.

Dkt. No. 31-1 at 8.

Article 2 of the FCAC Agreement identifies the parties to the agreement:

**ARTICLE 2**
**PARTIES**

**Section 1. Association.** Whenever the word "Association" is used herein, it shall mean the FINISHING CONTRACTORS ASSOCIATION OF CHICAGO ("FCAC"), an Illinois Not-For-Profit Corporation, which is the assignee in both right and obligation, pursuant to that certain Assignment of Collective Bargaining Rights letter dated as of May 9, 2007, from the PAINTING AND DECORATING CONTRACTORS' ASSOCIATION, CHICAGO COUNCIL, an Illinois not-for-profit corporation, and that certain Acceptance thereof by FCAC also dated as of May 9, 2007, and all of its members individually and collectively, whether now belonging to said FCAC or who may hereafter be admitted to membership. The members of said FCAC [and any other employer who is not a member of the FCAC but is

17

otherwise bound by this Agreement] being sometimes hereinafter referred to as "Employer."

**Section 2. Union.** Whenever the word "Union" is used herein, it shall mean the PAINTERS' DISTRICT COUNCIL NO. 14 and all of the local unions affiliated therewith and all of the members thereof, individually and collectively bound hereafter, whether now members of said local unions or who may hereafter become members of said unions. The members of said unions being sometimes referred to hereinafter as "Employees."

Id. at 8.

Article 3, Section 9, of the FCAC Agreement defines the scope of work, which generally applies to employees engaged in the work of preparing for, removing, installing, and/or repairing painting, drywall and drywall taping and other finishing work, and ancillary work to any of the work listed above. Dkt. No. 31-1 at 13, 14. The FCAC Agreement recognizes that "Employers" covered by the agreement are based in and typically perform work in the Chicago area, but also contains provisions that address the application of the agreement when "Employers" perform work outside District Council 14's principle geographic jurisdiction:

**Section 10. Work Outside DC-14 Area. (a) Employment of Local Resident Union Workers.** The Union and Employers understand that the principal place of business and employment of the present and future Employer members of the Association is in the Metropolitan Chicago Area which presently includes all of Cook, Lake, Will and Grundy Counties, Illinois, but that such Employers, on occasions, undertake work performed by journeymen and apprentice painters, decorators, paper hangers, drywall tapers, and applicators using tools of the trade to apply or remove materials used for or preparatory to decorating or protecting surfaces, in other cities and areas, on which occasions such Employers employ such additional Employee residents of such other city or area as the needs of the work require.

18

(b) **DC-14 Exclusive Bargaining Representative.** This Agreement shall embrace and PAINTERS' DISTRICT COUNCIL NO. 14 shall be the exclusive bargaining representative for and on behalf of all the Employees described herein who are employed by such Employer wherever and whenever employed during the term of this Agreement except supervisory employees and other Employees excluded under the provisions of the National Labor Relations Act as amended.

(c) **Majority of Workers Must be of the Local Area.** Provided, however, that when an Employer or contractor is engaged in work outside the geographical jurisdiction of the Union party to this Agreement, he shall employ not less than 50 percent of the painter work force employed on such work from among the residents of the area where the work is performed or from among persons who are employed the greater percentage of their time in such area. Additional painters shall be employed from the contractor's home area.

(d) **Local Bargaining Agreements.** The Employer when engaged in work outside the Union's geographic jurisdiction shall comply with all the lawful clauses of the collective bargaining agreement in effect in said other geographic jurisdictions and executed by the employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits and procedure for settlement of grievances set forth therein; provided however, that where no affiliated Union has a current effective agreement covering such out-of-area work, the employer shall perform such work in accordance with this agreement; and provided further that as to employees employed by such employer from the Union within the geographic jurisdiction of this agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction whichever are more favorable to such employees. This provision is enforceable by the District Council or Local Union in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in its applicable collective bargaining agreement and through the courts, and is also enforceable by the Union party to this agreement, both through the procedure for settlement of grievances set forth in this agreement and through the courts.

If no benefit contribution(s) or a lesser benefit contribution(s) amount is required in the home local than the amount required in Painters District Council No. 14 where the work is being performed, the contributions or difference in contribution amount shall be paid to the Painters District Council No. 14 fringe benefit Fund(s).

19

Dkt. No. 31-1 at 14-15.

Like the Milwaukee-area Agreement, the FCAC Agreement contains a

union subcontracting clause in Article 11, Section 1:

> **Section 1. Subcontracting to Employees Prohibited.** Any Employer who subcontracts any work covered by this Agreement will notify the Union of the subcontractor before such work is begun. Employer agrees that he will not sublet any work to any Employee.
>
> (a)     The Employer shall require of the subcontractor a list of employees together with the address, social security number and the name of employees performing the subcontracted work, the location of the subcontracted work, a brief description of the type of property and a counting of the surfaces that were subcontracted which must be submitted on a form with the subcontracted dollar amount included. The form must be submitted to the Union before the job starts or the contract is violated and the prime contractor is subject to a fine imposed by the Joint Trade Board together with all other sanctions as provided in the contract.

Id. at 36.

Article 16 Section 2, Subsections (a) and (b) of the FCAC Agreement

address the jurisdiction of the joint trade board:

> **Section 2. Jurisdiction**. (a) To the Joint Trade Board shall be referred all disputes and matters of controversy arising under the provisions of this Agreement except as provided in Article 11, Section 3(b).
>
> (b) Any party to this Agreement may, by appeal from the decision of either party hereto, request a hearing of the matter in dispute by the Joint Trade Board, and such Joint Trade Board shall thereupon proceed to hearing and decision of such matter.

Id. at 49.

In addition, the FCAC Agreement contains a "Most Favored Nations"

clause which states:

It is the intent of the Union that this Agreement will establish standard wages, hours, terms, and working conditions to prevail within the Union's geographic jurisdiction for all work of a type covered by this Agreement, except in those instances where the International Union otherwise directs or where the Union has previously established a different bargaining history with another association of Employers. The Union does not intend to enter into any agreement with any Employer not covered by the foregoing exceptions which contains better language or conditions.

Id. at 55.

Miles Beatty has served as the Executive Director of the FCAC since December 2013. Dkt. No. 31 at ¶1. He also held the position of Secretary for the FCAC, participating in collective bargaining negotiations with District Council No. 14 as a representative of the FCAC since 1997. Id. at ¶¶1, 5. Beginning in 1982, "[t]he same or similar contractual out of area term at Article 3, Section 10 of the FCAC CBA has been included in previous collective bargaining agreements between District Council No. 14 and FCAC." Id. at ¶9. Beatty says that he is "not aware of District Council No. 14 ever seeking to enforce the out of area provision when an employer performed work in another District Council's territory but did not employ individuals performing work covered under another Painters District Council agreement." Id. at ¶12.

Plaintiff District Council No. 7 did not play any role in the negotiation or execution of the FCAC Agreement and Mehrhoff, as the Business Manager/Secretary Treasurer of District Council No. 7, testified that he is not aware of any district council representative sitting in the negotiations between the FCAC and District Council No. 14. Dkt. No. 30-2 at 7, Tr. Page 31 lines 9-19.

21

## ii.    **The MWCC Agreement**

The defendant also assigned its bargaining rights to the Midwest Wall and Ceiling Contractors (MWCC) for the purpose of negotiating a collective bargaining agreement with District Council No. 14. Dkt. 28-2 at ¶13. The relevant MWCC Agreement remained in effect from June 1, 2017 through May 31, 2021. Dkt. No. 28-2. The word "Association" in the MWCC Agreement refers to the MWCC and all of its members individually and collectively; "Employer" refers to the members of the Association. Id. at 6. The defendant agrees that it is bound to the MWCC Agreement. Dkt. No. 29-1 at 16.

The MWCC Agreement defines the "Bargaining Unit" as:

> All journeymen and apprentices and drywall finishers doing texturing and surfacing using the tools of the trade to apply drywall finishing materials, decorative, texturing, and surfacing, who are employed to do such work by the present and future Employer members of the Association in that area of Chicago, Cook, Lake, Grundy and Will Counties, Illinois, and such other work over which the Union may hereafter acquire jurisdiction.

Dkt. No. 28-2 at 7. It sets the wages, hours and working conditions in Articles 5 and 10. Id. at 12-13, 27-29. The MWCC covers employees engaged in drywall finishing work, as well as work related to, part of or ancillary to drywall finishing, which is further defined at Article 3, Section 10; the parties disagree as to whether this applies only to those for whom District Council No. 14 is the exclusive bargaining representative. Dkt. No. 35 at ¶37.

Article 1 of the MWCC Agreement state, in pertinent part:

22

**ARTICLE 1**
**OBJECTS**

The objects of this Agreement and the aims and intentions which all parties are desirous of attaining are:

. . . .

(d) To raise the standards of the Drywall Industry in the City of Chicago, Cook, Lake, Grundy and Will Counties, Illinois and in whatever additional jurisdiction may be awarded to the Union, so that it may command the respect and increased patronage by the public by giving it the highest quality of work at fair and reasonable prices.

Dkt. No. 28-2 at 6.

Article 2 of the MWCC Agreement identifies the parties:

**ARTICLE 2**
**PARTIES**

Whenever the word "Association" is used herein, it shall mean Midwest Wall and Ceiling Contractors and all of its members individually and collectively, whether now belonging to said Association or who may hereafter be admitted to membership. The members of said Association being sometimes hereinafter referred to as "Employer".

Whenever the word "Union" is used herein, it shall mean the PAINTERS' DISTRICT COUNCIL NO. 14 and all the local unions affiliated therewith and all of the members thereof, individually and collectively bound hereafter, whether now members of said local unions or who may hereafter become members of said unions. The members of said unions being sometimes referred to hereinafter as "Employees".

Id.

Article 3, Section 7 of the MWCC Agreement addresses "out-of-area"

work:

**Section 7.** It being understood that the principal place of business and employment of the present and future Employer members of the Association is in the Metropolitan Chicago Area including Cook,

23

Lake, Grundy and Will Counties, Illinois, and such other jurisdiction as may be awarded hereafter, but that such employers on occasions, undertake work performed by journeymen and apprentice drywall finishers and texturers, using tools of the trade to apply material used for or preparatory to finishing surfaces, in other cities and areas, on which occasions such Employers employ such additional Employee residents of such other city or area as the need of the work require.

This Agreement shall embrace, and PAINTERS' DISTRICT COUNCIL NO. 14 shall be the exclusive bargaining representative for and on behalf of all the Employees described herein who are employed by such Employer wherever and whenever employed during the term of this Agreement except supervisory employees and other employees excluded under the provisions of the National Labor Relations Act as amended.

Provided, however, that when the above Employer or contractor is engaged in work outside the geographical jurisdiction of the Union party to this Agreement, he shall employ not less than Fifty (50) percent of the men employed on such work from among the residents of the area where the work is performed or from among persons who are employed the greater percentage of their time in such area except in the jurisdiction of PDC 14 and PDC 30.

And provided further that the Employer when engaged in work outside the geographical jurisdiction of the Union party to the Agreement shall comply with all of the lawful clauses of the collective bargaining agreement in effect in said or other geographical jurisdiction and executed by the Employers of the industry and the local Unions in that jurisdiction, including, but not limited to, the provisions of wages, hours, working conditions and all fringe benefits therein provided, including all provisions relating to the settlement of grievances, provided, however, that as to Employees employed by such Employer from within the geographic jurisdiction of the Union party to this Agreement and who are brought into an outside jurisdiction, such Employees shall be entitled to receive the wages and conditions of employment effective in either the home or outside jurisdiction, whichever are more favorable to such Employees.

Provided further that this paragraph shall not be effective unless or until the Union or council domiciled in the area outside the geographic jurisdiction of the Union party to this Agreement has in its collective bargaining agreement a provision similar in substances to that contained in this section.

24

The Union agrees that it will use its best efforts to achieve compliance with the terms of such similar provisions in the contracts of Union contractors from other areas who are performing work in this Union's geographical jurisdiction.

Id. at 11. Since at least 2003, the same or similar contractual out-of-area provision has been included in previous collective bargaining agreements between District Council No. 14 and MWCC. Dkt. No. 38 at 16.

Article 7, Section 2 of the MWCC Agreement covers the joint trade board:

**Section 2.** (a) Each Employer party to this Agreement agrees to pay the sums specified above to the Pension Fund for the purpose of providing pension benefits to each eligible Employee. It is expressly understood and agreed that the Agreement and Declaration of Trust, together with all amendments, rules regulations, policies, and procedures adopted pursuant thereto are incorporated herein by reference and made a part hereof, and that all Employers party to this Collective Bargaining Agreement agree to become or remain bound by and to be considered a party to said Agreement and Declaration of Trust as if said Employers have signed the original copies of the aforementioned Trust instruments and all amendments thereto. All Employers party to this Agreement hereby ratify and confirm the appointment of the Employer Trustees of said Trust, who shall, together with their successor Trustees designated in the manner provided in said Agreement and Declaration of Trust, and jointly with an equal number of Trustees appointed by the Union, carry out the terms and conditions of the Trust Agreement.

(b) The said Pension Fund is and shall continue to be administered by an equal number of representatives of the Employers and the Union pursuant to the Agreement and Declaration of Trust heretofore signed by the Chicago Council of the Painting and Decorating Contractors of America and the Union as now in effect, and as it may be amended from time to time by agreement of said Association and the Union and in the manner provided in the Agreement and Declaration of Trust.

Dkt. No. 28-2 at 20-21.

The MWCC Agreement also contains a "Most Favored Nation" clause identical to the one in the FCAC agreement. Id. at 46.

25

In addition, District Council No. 14 issued a "Notice to All District Council #14 and District Council #30 Signatory Employers," including, but not limited to, MWCC. Dkt. No. 32-1.[1] District Council No. 14's Notice quoted the out-of-area term language and stated, in part:

> In addition, when applicable, the employees are to receive the higher wage package and the more favorable working conditions when working in either jurisdiction. This is outlined in Article II Section 9 of District Council #14's Collective Bargaining Agreement, Article 5 Section 5.1(b) and (c) of District Council #30's Collective Bargaining Agreement and Section 242 of the Constitution of the International Union of Painters and Allied Trades.

Id. at 1.

District Council No. 14 also authored[2] a Side Letter to the June 1, 2008 to May 31, 2012 Agreement between MWCC and District Council No. 14, with the subject being "Work Performed By Out of Area Members in Painters District Council No. 14 Jurisdiction." Dkt. No. 32-2. The Side Letter explained:

> Pursuant to the Collective Bargaining Agreement between Painters District Council No. 14 and the GDNCI/CA WCC the following custom and practice shall continue. It is the Employers' obligation to pay the employee the higher rate of pay and benefits between the employee's home local and the local where the work is performed.
>
> In the event no benefit contribution(s) is/are required to one or more funds in the home jurisdiction, but are required in the jurisdiction where the work is performed, then the contributions shall be made to the fund where the contributions are required. Nothing herein

---

[1] Neither the declaration of MWCC counsel Stanley Niew (Dkt. No. 32) nor the notice (Dkt. No. 32-1) indicate when the notice was issued.

[2] The letter provided by the defendants is not signed or dated. It contains a signature block for "Terry Fitzmaurice," who is identified as "Secretary/ Treasurer", but the signature and date lines are blank. It also provides a signature block for someone named "Joseph Feldner" of the MCWW predecessor GDNCI/CA WCC; again, the signature and date lines are blank. Dkt. No. 32-2.

shall change any of the terms of the attached Letter of Understanding between Painters District Councils No. 14 and 30.

Pursuant to the above understanding, Employer's 9(a) recognition extended to Painters District 14 and District 30 shall not alter the above contribution requirements nor result in double contribution from the Employer for the same work to each Council's benefit funds.

Id.

Mehrhoff testified that he was not aware of plaintiff District Council No. 7 playing any role in the negotiation or execution of the MWCC Agreement or any prior collective bargaining agreement reached between MWCC (or its predecessors) and District Council No. 14; Dkt. No. 30-2 at 7, Tr. Page 31 lines 9-13. He testified that he did not know whether a District Council No. 7 representative ever has been present for any collective bargaining agreement negotiations between District Council No. 14 and FCAC. Id., lines 14-19. District Council No. 7 never has granted authority to District Council No. 14 to bargain a collective bargaining agreement with FCAC. Id. at 6-7, Tr. Page 30 lines 22-25; Tr. Page 31 line 1.

3.    *International Union of Painters and Allied Trades Constitution*

Recall that plaintiff District Council No. 7 is an affiliate of the International Union of Painters and Allied Trades (IUPAT).

Section 224 of the 2015 to 2020 Constitution of the IUPAT is one of several "Mandatory Clauses" that it states "Apply to All Collective Bargaining Agreements Within the Jurisdiction of the International Union." Dkt. No. 30-9 at 5. The constitution provides:

**Sec. 224.** District Councils and unaffiliated Local Unions shall include in each of their collective bargaining agreements the following clause: "The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to the agreement, comply with all of the lawful clauses of the collective bargaining agreement in effect in said other geographic jurisdiction and executed by the employers of the industry and the IUPAT affiliated union in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievances set forth therein; provided however, that where no affiliated union has an agreement covering such out-of-area work, the Employer shall perform such work in accordance with this agreement; and provided further that employees from within the geographic jurisdiction of the Union party to this agreement who work in an outside jurisdiction at the Employer's request (but not employees who travel to the jurisdiction to seek work or who respond to a job alert issued by the IUPAT) shall receive (a) contributions to their home benefit funds at the rate called for in their home agreement and (b) (i) wages equal to the higher economic package minus the amount of contributions paid under (a), or (ii) wages equal to their home wages and a contribution to a defined contribution retirement plan equal to [the higher economic package] minus [the amount of contributions paid under (a) plus the home wages]. This provision is enforceable by the union in whose jurisdiction the work is being performed, either through the procedure for settlement of grievances set forth in its applicable collective bargaining agreement or through the courts, and is also enforceable by the Union party to this agreement, either through the procedure for settlement of grievances set forth in this agreement or through the courts. On a monthly basis, the Employer shall provide the affiliated Union in whose area the work is performed with documentation that it has made fringe benefit contributions to the home funds for all employees brought into the jurisdiction by the Employer."

Id. at 5-6.

4.      *Underlying Dispute—The St. Rita's Square Project*

The defendant served as the general contractor for the project known as St. Rita's Square—Church and Senior Living Community ("St. Rita's Square"), located at North Van Buren and East Pleasant Streets in Milwaukee, Wisconsin. Dkt. No. 33 at ¶12. The St. Rita's Square project is a six-story

28

senior living community that includes independent living apartments and a church with fellowship hall, kitchen, meditation garden and small group worship area. Id. at ¶13. The defendant hired All Tech Decorating as a subcontractor to perform painting work. Dkt. No. 29-1 at ¶23. All Tech is a member of the employer association party to the Milwaukee-area Agreement and the painting work performed by All Tech was performed in accordance with the Milwaukee-area Agreement. Dkt. No. 26 at ¶¶18, 19. The defendant also engaged Applewood Drywall Service, Inc., who is *not* a party to the Milwaukee-area Agreement, to perform drywall work at the St. Rita's project. Dkt. No. 29-1 at ¶25; Dkt. No. 30-2 at 21, Tr. Page 62 lines 11-15. Employees of plaintiff District Council 7 observed employees of Applewood Drywall performing drywall and other finishing work. Dkt. No. 26 at ¶20.

Plaintiff District Council No. 7 knew that the defendant was bound to the District Council 14 collective bargaining agreement. Id. at ¶17. In late December 2019 or early January 2020, after learning that the defendant had hired a non-union contractor to perform drywall and finishing work, Mehrhoff had a brief conversation with District Council 14's business manager, John Spiros. Dkt. No. 26 at ¶21. Mehrhoff told Spiros that plaintiff District Council 7 had learned that the defendant had subcontracted to a non-union contractor work covered by the District Council No. 14 and Milwaukee-area Agreements. Id. at ¶22.

By letter to the defendant dated January 15, 2020, Spiros stated that the defendant was in violation of the out-of-area and subcontracting clauses in the

District Council No. 14 Agreements. Id. at ¶23; Dkt. No. 29-1 at ¶¶27-29.
Spiros copied plaintiff District Council No. 7 on the letter and also received a
copy of the defendant's reply disputing its obligation to comply with the out-of-
area provision. Dkt. No. 35 at ¶56.

On January 31, 2020, Mehrhoff, on behalf of plaintiff District Council
No. 7, wrote the defendant regarding the St. Rita's Square project. Dkt. No. 30-
8; Dkt. No. 30-2 at 22-23, Tr. Page 112 lines 22-25; Tr. Page 113 lines 1-25.
The letter stated:

> I am the Business Manager of Painters District Council No. 7. As
> you are aware by virtue of your agreements with District Council No.
> 14, you are bound by the terms and conditions of our Milwaukee
> Area Agreement for the St. Rita's Square Project. Enclosed is a copy
> of that Agreement.
>
> Please consider this a grievance of Article 11 of our Agreement. Your
> Company is in violation of Article 24, Sec.1 of the Agreement by
> subcontracting covered work on the St. Rita's Project to Applewood
> Drywall Services who is not party to an Agreement with our Union.
>
> As a remedy, we want persons on the Union's out of work list made
> whole for wages and benefits [sic] all work performed on the St.
> Rita's Project. By copy of this letter we are notifying Pepper
> Construction that a meeting of the Joint Trade Board to resolve the
> grievance will be scheduled on Tuesday March 3, 2020 at 10 a.m. at
> the offices of IUPAT District Council 7 located at S68 W22665
> National Avenue, Big Bend Wisconsin 53103.
>
> Please call me if you would like to meet and discuss settlement of
> this matter.

Dkt. No. 30-8. For some reason, the March 3, 2020 Joint Trade Board meeting
was postponed. Dkt. No. 26 at ¶28; 29-1 at ¶38.

On August 25, 2020, Scott Franckowiak, on behalf of District Council
No. 7, wrote another letter to the defendant regarding the St. Rita's Square

project. Dkt. No. 30-12; Dkt. No. 30-2 at 37, Tr. Page 151 lines 3-25.

Franckowiak's letter stated:

> I understand that your company was performing work in Milwaukee
> County. Congratulations on being awarded this work. Milwaukee is
> located within the territorial jurisdiction of District Council 7 and its
> fully affiliated Local 781. The area representative for this project is
> Scott Franckowiak. You may reach the area Representative assigned
> to assist you on this project at 414-412-6233 or contact the District
> Council Headquarters at 262-662-1827 ext. 129.

> The Administrative Dues Check-off in District Council 7 is 3% of the
> total package. Pursuant to the terms of your National and home area
> collective bargaining agreements, this amount is paid, via a payroll
> deduction by the employer, for all individuals working for you within
> the jurisdiction of District Council 7 for the employees that you hire
> locally **and the employees that you bring with you**. If there are
> any questions as to the dues required to be paid here or you, in any
> way, do not agree with the above, contact this office immediately.

> Enclosed please find dues remittance forms for the anticipated
> length of your project. Please send in one of the enclosed forms along
> with the 3% dues, in accordance with the instructions on the form
> on or before the 20th of the month following the month in which the
> work here is performed. Should you or your payroll department have
> any questions, please do not hesitate to contact me. If at some point,
> you hire any local manpower, I will provide you with a memorandum
> of understanding so as to allow your company to make contributions
> into the appropriate funds. Please email a signed copy to:
> scott@iupatdc7.com.

> We hope your work in District Council 7 was a success. Please feel
> free to contact me if I can be of any assistance or if you have any
> questions. In the future we would apricate if you check in before
> starting work in our area.

Dkt. No. 30-12 at 1.

On or about September 16, 2020, the defendant's Senior Vice President

and General Counsel responded to District Council No. 7 with the following

letter:

Thank you for your letter of August 25, 2020 and your advice concerning the Painters District Council 7 contract for our project in Milwaukee, although I am afraid your efforts are misplaced since we are not subject to Local 7's contract. In any event, and for your benefit, we employed members of Painters District Council 14 on the project you referenced. We followed all the requirements of the PDC 14 agreement and remitted all necessary dues deductions and benefit fund contributions for the work performed according to our local agreement with PDC 14. I trust this addresses the matters raised in your letter

Id. at 3. District Council No. 7 did not respond to the defendant's September 16, 2020 letter. Dkt. No. 30-2 at 38, Tr. Page 152 lines 8-16.

It is this dispute—whether the defendant violated the Milwaukee-area Agreement by hiring a non-union subcontractor to work on the St. Rita's project—that the plaintiff seeks to compel the defendant to resolve by arbitration.

C.    Plaintiffs' Motion for Summary Judgment (Dkt. No. 23)

1.    *Plaintiffs' Brief* (Dkt. No. 24)

The plaintiffs move for summary judgment on the ground that the defendant is obligated to arbitrate this dispute even though it was not a signatory to the District Council No. 7 Milwaukee-area Agreement. Dkt. No. 24 at 1, 13. The plaintiffs explain that the defendant is bound by the District Council No. 14 agreements, which contain out-of-area provisions obligating an employer working outside of its district council's geographic jurisdiction to comply with all lawful terms of the collective bargaining agreement in effect where the work is being performed. Id. at 15. The plaintiffs assert that the District Council No. 14 Agreements created rights for District Council No. 7 to enforce. Id. at 16. Both the District Council No. 14 and District Council 7

32

agreements obligate the employer to comply with the agreement in effect where the work is performed and to submit any dispute regarding the "out-of-area" provision to a joint trade board comprised of six members. Id. at 4-5, 7-9. In this case, the alleged dispute involves the defendant's decision to hire a non-union subcontractor in violation of Article 24, section o1 of the Milwaukee-area Agreement. Id. at 20, 21.

2. *Defendant's Brief in Opposition* (Dkt. No. 34)

The defendant responds that multiple courts have rejected the plaintiffs' position. Dkt. No. 34 at 5. According to the defendant, the two agreements to which the defendant is bound "unambiguously require that [the defendant] abide by the local work rules, wage payment scales and similar conditions of employment only when the Company brings a District Council No. 14 member to work in another geographic territory where another collective bargaining agreement is in effect." Id. at 5-6. If the court finds any ambiguity in the District Council No. 14 agreements, the defendant says the court may resolve the ambiguity through extrinsic evidence. Id. The defendant distinguishes the cases cited by the plaintiffs, McKinstry Co. v. Sheet Metal Workers' Intern. Ass'n, Local Union No. 16, 859 F.2d 1382, 1386 (9th Cir. 1988) and Local Union No. 36 Sheet Metal Workers' Int'l Ass'n v. Atlas Air Conditioning, 926 F.2d 770, 772 (8th Cir. 1991), arguing that those cases involved "national level negotiations" and a standard form collective bargaining agreement. Id. at 8-9. In contrast, the defendant cites to a Sixth Circuit decision, Trustees of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling and Partition Co., Inc., 48 F. App'x 188,

33

193-94 (6th Cir. Oct. 4, 2002), which considered extrinsic evidence in determining the parties' intent. Id. at 10. The defendant also cites Laborers Int'l Union of N. Am. v. HSA Contractors, Inc., 728 F. Supp. 519 (E.D. Wis. 1989), which rejected an employer's attempt to compel the union to arbitrate a dispute through the out-of-area clause. Id. at 15-16. The defendant takes the position that the District Council No. 14 agreements clearly set out terms concerning the working conditions that apply to District Council No. 14 members who are brought by the defendant to work in another geographic territory. Id. at 16. The defendant argues that the agreements set clear limitations on the geographic boundaries and who will benefit. Id. at 17.

The defendant says that in the event the court decides that the terms are ambiguous, it has provided extrinsic evidence and urges the court to construe the terms—drafted by the union—against the plaintiffs and in favor of the defendant. Id. at 21. The extrinsic evidence includes the past practices of District Council Nos. 7 and 14, which never have forced a non-signatory to the agreement to hire its employees. Id. at 22, 24. The defendant says that both districts have enforced the provision in a limited circumstance where the contractor brings in district council members from a home jurisdiction to another jurisdiction. Id. at 24. The defendant also filed the declaration of the FCAC's Executive Director, who says he never understood the FCAC Agreement to bind FCAC members to grant benefits to another district's members. Id. at 25. The defendant points to the Side Letter to the MWCC Agreement effective between June 1, 2008 and May 31, 2012, that explains that the out-of-area

34

term addresses only its member pay and benefits. Id. at 27. The defendant says that when this evidence is considered and the agreement is read as a whole, the "only reasonable conclusion is that the out of area term applies only to employees who are members of District Council No. 14." Id. at 28-29.

Finally, the defendant argues that the plaintiff's attempt to enforce the subcontracting clause of the Milwaukee-area Agreement violates §8(e) of the National Labor Relations Act. Id. at 29. The defendant asserts that the subcontracting exception to §8(e) protects subcontracting only where there is a bargaining unit whose work is subject to protection. Id. at 29-32. It argues that a subcontracting provision is not enforceable in cases such as this, where the defendant does not employ District Council No. 7 employees anywhere at all, let alone in the area covered by the Milwaukee-area Agreement. Id. at 32. The defendant states that there "is no evidence that the FCAC CBA or the MWCC CBA was forged from a set of national negotiations that led to a standard that local parties then finalized." Id. at 33. The defendant urges the court to deny the plaintiffs' motion for summary judgment because there are genuine issues of material fact that preclude judgment as a matter of law. Id. at 34.

      3.    *Plaintiffs' Reply* (Dkt. No. 44)

The plaintiffs remind the court that the only issue is whether the defendant agreed to arbitrate the grievance. Dkt. No. 44 at 2. They emphasize that the defendant doesn't deny that it is bound to the District Council No. 14 agreements or that the out-of-area language requires it to comply with all lawful provisions of the agreements in effect at the site where it performs the

extra-jurisdictional work. Id. The plaintiffs allege that the defendant's arguments are questions for the arbitrator—not the court. Id. at 3. The plaintiffs cite multiple cases holding that out-of-area contractor provisions create a third-party beneficiary status. Id. at 3 (collecting cases). They argue that the first sentence of the out-of-area clause requires compliance with all lawful provisions of the agreements; the dispute is over only the scope of the duty and the plaintiffs assert that the presumption of arbitrability applies. Id. at 4. The plaintiffs say the plain language of the District Council No. 14 agreements unambiguously confers benefits on and is enforceable by District Council No. 7. Id. at 6. The plaintiffs indicate that they are aware of only four cases interpreting "the Painters'" out-of-area language and all four held that the language reasonably bound an employer to an "away" collective bargaining agreement. Id. at 8 (citing Painters Dist. Council 16, Local Union 294 v. Color New Co., No. 12-cv-0570 LJO-BAM, 2012 WL 3235101, at *2 (E.D. Cal. Aug. 6, 2012); Dist. Council No. 16 of the Int'l Union of Painters & Allied Trades, Glaziers, Architectural Metal & Glass Workers, Local 1621 v. B & B Glass, Inc., 510 F.3d 851, 856 (9th Cir. 2007); Harris & Ruth Painting Contracting, Inc. v. Painters & Tapers Local Union 487 of the Brotherhood of Painters & Allied Trades, No. 96-1030 at 7; Schaper Painting Co. Inc. v. Painters' District Council 16, Case No. 01-cv-20371 (N.D. Cal. Sept. 27, 2001)).

Alternatively, the plaintiffs argue that any ambiguity can be resolved by considering the context of the collective bargaining agreements. Id. at 10. They say that historically, the construction industry agreements were developed to

"establish a floor under competitive labor costs to prevent a competitor from securing cost advantages through undercutting labor standards." Id. at 11 (citing MONTHLY LABOR REVIEW, Vol. 70, No. 1 (Jan. 1950), pp. 14-18, at p. 14). The plaintiffs insist that there was no single drafter of the agreements, that the Beatty declaration is largely inadmissible because it lacks foundation and is speculative, id. at 12, that past practice and waiver are for the arbitrator and not the court to decide, id. at 13, and that the District Council No. 14 documents do not create ambiguity, id. at 14.

Finally, the plaintiffs assert that the out-of-area and subcontracting provisions are lawful under the National Labor Relations Act. Id. at 14. The plaintiffs point to McKinstry, which held that a union signatory subcontracting clause in the collective bargaining agreement was lawful, accepted and enforceable. Id. at 15. The plaintiffs insist that because the subcontracting clause is lawful and the defendant must comply with the dispute resolution procedures in the Milwaukee area agreement, the dispute is arbitrable and their motion should be granted. Id. at 16.

D.    Defendant's Motion for Summary Judgment (Dkt. No. 21)

In its motion for summary judgment, the defendant asks the court to dismiss the plaintiffs' complaint and their motion to compel arbitration. Dkt. No. 21 at 33. Although the parties made most of the same arguments in briefing the plaintiffs' motion for summary judgment as they make in briefing the defendant's motion, the court briefly recounts the arguments in the context of the defendant's motion.

1.      *Defendant's Brief* (Dkt. No. 22)

The defendant asserts that "[w]hether District Council No. 7 may compel [the defendant] to arbitrate is a question of substantive arbitrability that this Court, rather than an arbitrator, must decide." Dkt. No. 22 at 12. It asserts that the signatories to the Milwaukee-area Agreement are the plaintiffs, "Hess Sweitzer Painting, LLC; the Wisconsin Painting Contractors Association; and the Southeastern Wisconsin Drywall Painting and Plastering Contractors Association." Id. at 13. The defendant says that neither the defendant nor anyone authorized to bargain on its behalf participated in negotiations with District Council No. 7 over the terms of the Milwaukee Agreement. Id. at 14. Accordingly, the defendant asserts that it "could not and did not assent to allow an arbitrator to decide questions of substantive arbitrability that arise between it and District Council No. 7." Id.

The defendant argues that neither the FCAD nor the MWCC agreements—by which it is bound—clearly and unmistakably grant the arbitrator the authority to decide whether the plaintiffs may compel the defendant to arbitrate the dispute. Id. The defendant says that this court must decide whether District Council No. 7 can compel [the defendant] to arbitrate its dispute related to the St. Rita's Square project." Id. at 15.

Next, the defendant argues that the out-of-area provisions of the FCAC and MWCC agreements clearly apply to District Council No. 14 members whom the defendant brings to work on projects outside that union's geographic jurisdiction. Id. at 16-21. The defendant points to the principal object of both

38

agreements, which is to raise the standards of painting and drywalling in the respective Illinois counties. Id. at 17. It argues that the out-of-area provisions establish that District Council No. 14 is the exclusive bargaining representative on behalf of all employees and that the provisions never refer to anyone other than the District Council No. 14 members. Id. at 18-19. The defendant argues that if the court finds the contractual language ambiguous, the extrinsic evidence supports the same interpretation. Id. at 22-28. The defendant insists that the Milwaukee-area Agreement must be construed against the District Council and in favor of the defendant and points to past practices and District Council No. 14's written communications. Id. at 22-26.

Finally, the defendant argues that the application of the subcontracting clause of the Milwaukee-area Agreement against the defendant is unlawful under NLRA §8(e). Id. at 29. The defendant says that a subcontracting provision is enforceable only where there is a bargaining unit whose work is subject to protection. Id. at 31. It asserts that here, there is no bargaining unit to protect, because the defendant does not employ District Council No. 7 members anywhere. Id. at 32. It argues, in essence, that because the portion of the contract the plaintiffs accuse the defendant of having violated is unenforceable, the court must dismiss the complaint. Id. at 33.

2.    *Plaintiffs' Opposition* (Dkt. No. 36)

The plaintiffs accuse the defendant of going to great lengths to "muddy the question" before the court: whether the defendant signed any agreement under which it is compelled to utilize the dispute resolution procedures in the

39

Milwaukee-area Agreement and, if so, whether District Council No. 7 can bring this suit and compel arbitration "even though it is not a signatory to the arbitration agreements."[3] Dkt. No. 36 at 1. According to the plaintiffs, the court may grant the defendant's motion for summary judgment only if the defendant establishes, as a matter of law, that the District Council No. 14 agreements did not confer a benefit on District Council No. 7 that would make it a third-party beneficiary or that the grievance does not fall within the scope of the agreement to arbitrate. Id. at 7.

The plaintiffs begin with the language in both District Council No. 14 agreements. The MWCC Agreement states:

> . . . the Employer when engaged in work outside the geographical jurisdiction of the Union party to the Agreement shall comply with all of the lawful clauses of the collective bargaining agreement in effect in said or other geographical jurisdiction . . .

Id. at 8. Similarly, the FCAC Agreement provides:

> The Employer when engaged in work outside the Union's geographic jurisdiction shall comply with all the lawful clauses of the collective bargaining agreement in effect in said other geographic jurisdictions and executed by the employers of the industry and the affiliated Local Unions in that jurisdiction . . .

Id. The plaintiffs assert that there is no dispute that the defendant is the employer or that District Council No. 14 covers Illinois counties, meaning that

---

[3] It is not clear what the plaintiffs mean when they state that District Council No. 7 "is not a signatory to the arbitration agreements." District Council No. 7 is a signatory to the Milwaukee-area Agreement, Article 11 of which contains the arbitration clauses. Dkt. No. 26-1. Perhaps the plaintiffs meant to say that the question is whether District Council No. 7 can bring this suit and compel arbitration even though the *defendant* is not a signatory to the agreement that contains the arbitration clause.

40

the Milwaukee project is outside the geographical jurisdiction of the District Council No. 14 agreements. Id. at 9. The plaintiffs say that other courts routinely conclude that identical language obligates the signatory parties working outside of the district to comply with the terms of the agreement in place at the site of the work. Id. at 9-11 (citing Atlas Air Conditioning, 926 F. 2d at 772; B&B Glass, Inc., 510 F.3d at 856). The plaintiffs point out that the defendant relies on an ERISA case, Ohio Ceiling & Partition Co., 48 F. App'x at, 192-93, and a case with materially different traveling contractor language, Trustees of Bricklayers & Allied Craftworkers, Loc. 5 New York Ret., Welfare, Apprenticeship Training & Journeyman Upgrading & Lab.-Mgmt. Coal Funds v. Charles T. Driscoll Masonry Restoration Co., 165 F. Supp. 2d 502, 511 (S.D.N.Y. 2001). Id. at 13.

The plaintiffs accuse the defendant of ignoring basic principles of contract interpretation. Id. at 14. They assert as an example that the language creates a specific exception to the application of the local or "away agreement":

> as to Employees employed by such Employer from within the geographic jurisdiction of the Union party to this Agreement and who are brought into an outside jurisdiction, such Employees shall be entitled to receive the wages and conditions of employment effective in either the home or outside jurisdiction, whichever are more favorable to such Employees.

Id. at 15. According to the plaintiffs, the defendant's interpretation doesn't make sense; they say that this paragraph suggests that there is another group of employees—those from outside District Council No. 14's jurisdiction—for whom the duty to comply with the local collective bargaining agreement applies. Id. The plaintiffs remind the court that it cannot look beyond the four

41

corners of the bargaining agreements when the agreement itself is unambiguous. Id. at 18. And they argue that if the court finds the language ambiguous, summary judgment is not proper. Id. at 20-24.

The plaintiffs end their brief by arguing that the defendant cannot establish that the dispute falls outside the scope of the duty to arbitrate because the provision—in all relevant agreements—is "enforceable by the District Council or Local Union in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances." Id. at 25. They assert that the Milwaukee-area Agreement clearly provides for a resolution by the joint trade board. Id. The plaintiffs maintain that subcontracting and out-of-area clauses are both common and contemplated by the drafters of §8(e). Id. at 28 (citing McKinstry, 859 F.2d at 1389-90).

3. *Defendant's Reply* (Dkt. No. 42)

The defendant replies that the plaintiffs rely exclusively on "highly distinguishable cases that fail to account for multiple courts that have sided" with the defendant's position. Dkt. No. 42 at 4. The defendant urges the court to focus on the contract language in this case, accusing the plaintiffs of failing to present "any evidentiary basis to support a national framework to bargaining" like that in McKinstry. Id. at 5. The defendant insists that it doesn't matter that it is relying on an ERISA case, suggesting that it is the plaintiffs' arguments that are superficial. Id. at 6. The defendant says that the plaintiffs are "flat wrong" when they say that every court has concluded that the language binds a covered employer to the terms of an extra-territorial

42

bargaining agreement; it asserts that one of the cases cited by the plaintiffs, Schaper Painting Co., reached the opposition conclusion. Id. at 11-12. The defendant says that in another case, the Central District of California refused to grant a union pension fund's motion for summary judgment where it found similar language ambiguous and concluded that the parties did not intend to bind the employer nationally. Hanson v. Stuart Dean Co., No. 2:18-cv-06682-ODW (PLAx), 2020 WL 418951, *5 (C.D. Cal. Jan. 27, 2020).

The defendant points to various provisions that it says supports its interpretation. First, it says that the FCAC and MWCC agreements include requirements to hire "not less than 50 percent of the painter work force employed on [work outside the geographical jurisdiction of District Council No. 14] from among the residents of the area where the work is performed." Id. at 13. The defendant says this supports its assertion that only employees who are District Council No. 14 members should benefit from the out-of-area clause. Second, the defendants emphasize that the provision says it applies to "employees employed by such employer from the Union within the geographic jurisdiction of this agreement and who are brought into an outside jurisdiction." Id. at 14. Third, the defendant contends that the "Most Favored Nations Clause" in the agreements merely reiterates District Council No. 14's intent to establish "standard wages, hours, terms and working conditions to prevail within the Union's geographic jurisdiction." Id. The defendant says that each of these provisions is evidence that the agreements were intended for the benefit of District Council No. 14 members when the defendant brought them

43

to another geographic jurisdiction. Id. at 15. The defendant insists that there is no evidence that either the FCAC or MWCC agreements were "forged from a set of national negotiations that led to a standard that local parties then finalized." Id. at 16. It contends that the subcontracting provisions are unlawful and that it was required to comply only with the lawful provisions of the Milwaukee-area Agreement. Id. Finally, the defendant dismisses all the plaintiffs' arguments regarding the defendant's extrinsic evidence and asks the court to grant its motion for summary judgment. Id. at 18.

  E.  Analysis

    1.  *This Court May Determine Arbitrability*

  The plaintiffs have asked the court to compel arbitration of the parties' dispute before the Joint Trade Board. The defendant argues that it never agreed to arbitrate the underlying dispute.

  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." United Steel Workers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 648-49 (1986) (citing Gateway Coal Co. v. Mine Workers, 414 U.S. 368, 374 (1974)). The threshold question in a motion to compel arbitration is whether the parties agreed— contracted—to have their grievances resolved by arbitration.

"[T]he question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." AT&T, 475 U.S. at 649. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Id. (multiple citations omitted). See also, United Natural Foods, Inc. v. Teamsters Local 414, 58 F.4th 927,933 (7th Cir. 2023) ("[W]hether the parties have agreed to arbitrate a particular issue is presumptively a question for judicial determination.").

Article 11 of the Milwaukee-area Agreement, titled "Dispute Resolution," contains fifteen sub-sections. Dkt. No. 26-1 at pages 13-14. None of those subsections delegate the determination of arbitrability to the Joint Trade Board. Article XVII of the FCAC Agreement is titled "Joint Trade Board;" Section 3 of Article XVII provides that that body may decide all matters or disputes involving the interpretation, application or adherence to the terms of the agreement, with some specified exceptions. Dkt. No. 30-7 at 41. Nothing in Article XVII delegates the determination of arbitrability to the Joint Trade Board. Article 17 of the MWCC Agreement is almost identical to Article XVII of the FCAC Agreement. Dkt. No. 30-6 at 42-43. It does not delegate the determination of arbitrability to the Joint Trade Board. Finally, the plaintiff agrees that this court "has jurisdiction to order arbitration of a dispute arising under a collective bargaining agreement," dkt. no. 24 at 12, and the defendant maintains that "[w]hether District Council No. 7 may compel [the defendant] to

45

arbitrate is a question of substantive arbitrability that this court, rather than an arbitrator, must decide," dkt. no. 22 at 12. (The defendant also confirms that neither the FCAC Agreement nor the MWCC Agreement clearly and unmistakably delegate the question of arbitrability to an arbitrator. Dkt. No. 22 at 14.)

The court concludes that it has the authority to decide whether the defendant is contractually obligated to resolve the underlying dispute by arbitration.

### 2. *Requirements for Compelling Arbitration*

"A court must enforce an arbitration clause where (1) there is a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate." Rock Hemp Corp. v. Dunn, 51 F.4th 693, 702 (7th Cir. 2022) (citing Druco Restaurants, Inc. v. Steak N Shake Enters., Inc., 765 F.3d 776, 781 (7th Cir. 2014)). See also, Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 687 (7th Cir. 2005).

#### a. Valid Agreement to Arbitrate

The defendant asserts that there is no valid agreement to arbitrate because it has not negotiated with or signed agreements with the plaintiffs; specifically, it argues that it is not a signatory to the Milwaukee-area Agreement that contains the arbitration clause the plaintiffs are seeking to enforce.

"[T]he general rule is that non-signatories are not bound to arbitration agreements." A.D. v. Credit One Bank, N.A., 885 F.3d 1054, 1060 (7th Cir.

2018) (citing <u>Zurich</u>, 417 F.3d at 687). The Seventh Circuit has held that it will enforce an arbitration agreement against a non-signatory "if the party seeking to compel arbitration can show that an exception to this general rule applies." <u>Id.</u> The court looks to "traditional principles of state law" to determine whether such an exception applies. <u>Id.</u> (quoting <u>Scheurer v. Fromm Family Foods, LLC</u>, 863 F.3d 748, 752 (7th Cir. 2017)). The parties did not conduct a choice-of-law analysis; they appear to assume that Wisconsin law governs.

Wisconsin case law recognizes "that contractual rights and obligations extend to nonsignatories under various common-law principles," including the third-party beneficiary principle. <u>Mayer v. Soik</u>, 970 N.W.2d 527, 2021 WL 3073073, at *4 (Wis. Ct. App. July 21, 2021). Under that principle, "to entitle [a] third person to recover upon a contract made between other parties, there must not only be an intent to secure some benefit to such third person, but the contract must have been entered into directly and primarily for his benefit." <u>Winnebago Homes, Inc. v. Sheldon</u>, 29 Wis. 2d 692, 699 (Wis. 1966) (quoting <u>State Dep't of Pub. Welfare v. Schmidt</u>, 255 Wis. 452, 455 (Wis. 1949)). (If Illinois law applied, the result would be the same: "The well-established rule in Illinois is that if a contract is entered into for the direct benefit of a third person, the third person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration," and "Illinois courts have found that a nonsignatory can enforce an arbitration clause if it is determined that the nonsignatory quali[f]ies as a third-party beneficiary of the agreement." <u>Ervin v. Nokia, Inc.</u>, 812 N.E.2d 534,

540 (Ill. App. Ct. 2004) (quoting <u>Olson v. Etheridge</u>, 686 N.E.2d 563, 566 (1997)).

Thus, for the *plaintiffs* to enforce the FCAC and MWCC Agreements—to which they are not signatories—they must demonstrate that those agreements intended to confer a direct and primary benefit on them. The plaintiffs argue that they are third-party beneficiaries of the out-of-area clauses in the FCAC and MWCC Agreements (by which the defendant is bound). Dkt. No. 24 at 15-16. They assert that the FCAC and MWCC out-of-area clauses require entities like the defendant—an employer under those contracts—to comply with the requirements of the Milwaukee-area Agreement when working in the geographic area covered by that agreement. <u>Id.</u> at 16-17. And they argue that requirement is intended to benefit third parties—the non-signatory unions whose collective bargaining agreements apply in the "away" geographic area.

The plaintiffs' theory is not novel. In 1988, the Ninth Circuit addressed Local 16's claim that a prime contract bidder had violated the contractor's collective bargaining agreement with a different union. <u>McKinstry</u>, 859 F.2d at 1384. The court found that an out-of-area agreement between the contractor and the non-plaintiff union conferred third-party benefits on plaintiff Local 16. <u>Id.</u> at 1385-86. It found that the agreement as a whole "was clearly intended to extend certain direct and indirect benefits to workers other than those represented by" the union party to the contract. <u>Id.</u> at 1386. The Ninth Circuit found that if the contractor had violated the out-of-area clause, it would be the plaintiff, out-of-area union—even though the plaintiff union was not a party to

48

the contract that contained the out-of-area clause—that would be aggrieved. Id. at 1386-87. The Third Circuit cited McKinstry in finding that a non-signatory union had demonstrated that the language of an out-of-area agreement in a contract between a tile installation corporation and two different unions conferred benefits on the non-signatory union. Int'l Union of Bricklayers and Allied Craftsworkers, Local 5 v. Banta Tile & Marble Co., Inc., 344 F. App'x 770, 774-775 (3d Cir. 2009).

The language of the FCAC and MWCC agreements to which the defendant is a party demonstrate an intent to benefit third parties. Article III (titled "Recognition—Union Shop") of both agreements includes a sentence requiring the Employer—when engaged in work outside of the Union's geographic jurisdiction—to comply with "all of the lawful clauses of the collective bargaining agreement in effect in said or other geographical jurisdictions and executed by the employers of the industry" and affiliated local unions in that jurisdiction. Dkt. Nos. 31-1 at 14; 28-2 at 11.[4] The only purpose of a provision requiring signatory employers working outside the agreement's jurisdiction to comply with all the lawful clauses of any applicable out-of-area collective bargaining agreement is to benefit the out-of-area unions and their

_____

[4] The MWCC Agreement specifies its out-of-area agreement is not effective "unless or until the Union or council domiciled in the area outside the geographic jurisdiction of the Union part to the Agreement has in its collective bargaining agreement a provision similar in substances to that contained in this section." Dkt. No. 28-2 at 11. The Milwaukee-area Agreement meets that requirement. It covers the same drywall work being performed and contains a similar out-of-area clause. Dkt. No. 26-1 at 3-4.

49

members. It prevents a signatory employer from accepting out-of-area work but refusing to abide by the valid collective bargaining agreements in place in that area.

Under Wisconsin law, "[w]hen the terms of a contract are unambiguous, the court must construe a contract according to its literal terms and [the court] presume[s] the parties' intent is evidenced by the unambiguous words they chose." Abraham v. Washington Group Int'l, Inc., 766 F.3d 735, 739 (7th Cir. 2014) (citing Tufail v. Midwest Hospitality, LLC, 348 Wis. 2d 631, 642 (Wis. 2013)). The same is true under Illinois law: Camico Mut. Ins. Co. v. Citizens Bank, 474 F.3d 989, 993 (7th Cir. 2007) ("If the language of the contract is clear and unambiguous, we interpret the contract without the use of parol evidence . . . and contract terms are interpreted according to their plain meaning unless otherwise defined."). The language in the FCAC and MWCC Agreements to which the defendant is a party evinces an unambiguous intent to confer a benefit on out-of-area unions that have collective bargaining agreements in place. The FCAC and MWCC Agreements express the contracting employers' intent to comply with and enforce the terms of the collective bargaining agreement in effect in the area where the employer is performing the work. This means—as the McKinstry and Banta courts found—that the plaintiffs are third-party beneficiaries of the FCAC and MWCC Agreements and can demand that the defendant comply with the out-of-area provisions in those contracts that are intended to benefit them.

The defendant insists, however, that the out-of-area clauses in the FCAC and MWCC Agreements apply only when it brings a District Council No. 14 member to work in another geographic location. (Recall that that is not what happened at St. Rita's; the plaintiffs allege that the defendant brought in Applewood Drywall Services, who was not a party to an agreement with either the plaintiff or District Council No. 14. Dkt. No. 1 at ¶15.) The defendant cites the following language in the agreements:

- Article 1, OBJECTS: "To raise the standards of the [Painting/Drywall Industry] in the City of Chicago, Cook, Lake, Will and Grundy Counties, Illinois, and in whatever additional jurisdiction as may hereafter be awarded to the union . . ." Dkt. Nos. 31-1 at 8; 28-2 at 6.

- Article 2, PARTIES: "Whenever the word 'Union" is used herein, it shall mean the PAINTERS' DISTRICT COUNCIL NO. 14 and all the local unions affiliated therewith and all the members thereof . . . ." Dkt. Nos. 31-1 at 8; 28-2 at 6.

- Article 3, RECOGNITION – UNION SHOP, Section 7 (FCAC) and Section 10 (MCWW): "This Agreement shall embrace, and the PAINTERS' DISTRICT COUNCIL NO. 14 shall be the exclusive bargaining representative for and on behalf of all the Employees described herein who are employed by such Employer wherever and whenever employed during the term of this Agreement except supervisory employees and other Employees excluded under the provisions of the National Labor Relations Act as amended." Dkt. Nos. 31-1 at 14; 28-2 at 11.

- Article 3, RECOGNITION – UNION SHOP, Section 7 (FCAC) and Section 10 (MCWW): "Provided, however, that when the above Employer or contractor is engaged in work outside the geographical jurisdiction of the Union party to this Agreement, he shall employ not less than Fifty (50) percent of the men employed on such work from among the residents of the area where the work is performed or from among persons who are employed the greater percentage of their time in such area . . . Dkt. No. 28-2 at 11.

51

- Article 3, RECOGNITION – UNION SHOP, Section 7 (FCAC) and Section 10 (MCWW):

> **Local Bargaining Agreements.** The Employer when engaged in work outside the Union's geographic jurisdiction shall comply with all the lawful clauses of the collective bargaining agreement in effect in said other geographic jurisdictions and executed by the employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits and procedure for settlement of grievances set forth therein; provided however, that where no affiliated Union has a current effective agreement covering such out-of-area work, the employer shall perform such work in accordance with this agreement; **and provided further that as to employees employed by such employer from the Union within the geographic jurisdiction of this agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction whichever are more favorable to such employees.** This provision is enforceable by the District Council or Local Union in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in its applicable collective bargaining agreement and through the courts, and is also enforceable by the Union party to this agreement, both through the procedure for settlement of grievances set forth in this agreement and through the courts.

Dkt. No. 31-1 at 14 (the FCAC Agreement) (emphasis added).

> And provided further that the Employer when engaged in work outside the geographical jurisdiction of the Union party to the Agreement shall comply with all of the lawful clauses of the collective bargaining agreement in effect in said or other geographical jurisdiction and executed by the Employers of the industry and the local Unions in that jurisdiction, including, but not limited to, the provisions of wages, hours, working conditions and all fringe benefits therein provided, including all provisions relating to the settlement of grievances, **provided, however, that as to Employees employed by such Employer from within the geographic jurisdiction of the Union party to this Agreement and who are brought into an outside jurisdiction, such Employees**

52

**shall be entitled to receive the wages and conditions of employment effective in either the home or outside jurisdiction, whichever are more favorable to such Employees.**

Dkt. No. 28-2 at 11 (the MCWW Agreement) (emphasis added).

The defendant asserts that rather than demonstrating a clear intent to benefit out-of-area unions (third parties), these sections demonstrate a clear intent to benefit District Council No. 14, to make District Council No. 14 the exclusive bargaining unit and to limit the out-of-area clause to instances where the employer brings a District Council No. 14 to a work site outside of its geographic jurisdiction. The court does not agree. Articles 1 and 2 of the FCAC Agreement do not support the defendant's reading; Article 1 is aspirational, stating that the object of the agreement is to raise the standards of the industry in the relevant Illinois counties, and Article 2 defines the word "union" to mean District Council No. 14 and its affiliated locals.

As for Article 3, the defendant takes the bolded language upon which it relies out of context. The defendant is correct that the bolded language in the final two paragraphs above provides protection for employees of the defendant who are taken into an outside jurisdiction. But that language does not stand alone. The first part of Section 10(d) of the FCAC Agreement says that "The Employer"—*the defendant*—"when engaged in work outside the Union's geographic jurisdiction shall comply with all the lawful clauses of the collective bargaining agreement in effect in said other geographic jurisdictions and executed by the employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working

53

conditions, fringe benefits and procedure for settlement of grievances set forth therein . . . ." Dkt. No. 31-1 at 14. That provision applies when *the defendant* is working outside the union's geographic jurisdiction; it is not limited to occasions when *an employee* of the defendant is brought into an outside jurisdiction. The agreement goes on to say, "provided however, that where no affiliated Union has a current effective agreement covering such out-of-area work, the employer shall perform such work in accordance with this agreement; and **provided further that as to employees employed by such employer from the Union within the geographic jurisdiction of this agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction whichever are more favorable to such employees**." Id. The bolded language—the language upon which the defendant relies—is part of a provision that describes what happens when a signatory employer is working out-of-area but there is no affiliated union with an effective contract covering that area. The language upon which the defendant relies does not become applicable unless a signatory employer is working in an area that is outside the union's geographic jurisdiction *and* in which there is no affiliated union with a contract in effect.

The fourth paragraph of Section 7 of the MCWW agreement is slightly different, but it is a difference without a distinction in the context of the defendant's argument. That agreement states that ". . . the Employer"—*the defendant*—"when engaged in work outside the geographical jurisdiction of the

54

Union party to the Agreement shall comply with all of the lawful clauses of the collective bargaining agreement in effect in said or other geographical jurisdiction and executed by the Employers of the industry and the local Unions in that jurisdiction, including, but not limited to, the provisions of wages, hours, working conditions and all fringe benefits therein provided, including all provisions relating to the settlement of grievances . . . ." Dkt. No. 28-2 at 11. Again, the agreement requires a signatory employer to comply with effective collective bargaining agreements when working in an out-of-jurisdiction area. The bolded language then specifies what happens when employees of a signatory employer who are employed within the union jurisdiction are brought into an outside jurisdiction: "**provided, however, that as to Employees employed by such Employer from within the geographic jurisdiction of the Union party to this Agreement and who are brought into an outside jurisdiction, such Employees shall be entitled to receive the wages and conditions of employment effective in either the home or outside jurisdiction, whichever are more favorable to such Employees.**" Dkt. No. 28-2 at 10-11. The bolded language applies only when a signatory employer takes one of its within-jurisdiction employees out of the jurisdiction; it does not apply to people in the out-of-jurisdiction area whom a signatory employer might employ.

Neither provision is ambiguous. Both agreements carve out a subgroup of a signatory employer's in-jurisdiction employees who are taken out-of-district and provide that employees in that subgroup can obtain either the

benefits of the in-jurisdiction agreement or the out-of-area agreement, whichever is more favorable. The FCAC subgroup is the signatory employer's employees employed in-jurisdiction who are taken to a jurisdiction where there is no affiliate agreement in place. The MWCC subgroup is the signatory employer's employees employed in-jurisdiction who are taken to another jurisdiction.

The defendant's arguments go beyond the question of whether the District Council No. 14 agreements express an intent to benefit the local union when the employer's in-jurisdiction employees work outside the Illinois counties covered by District Council No. 14. The defendant argues, based on language pulled out of context, that purpose and intent of *all* out-of-area provisions of the FCAC and MWCC agreements was to protect District Council No. 14. The language of the agreements unambiguously states otherwise.

The defendant's brief is replete with evidence of past practices, the opinion of the Executive Director of the FCAC and the plaintiffs' own conduct, but it is not appropriate for the court to consider that extrinsic evidence when the court finds the contract language to be unambiguous. Abraham, 766 F.3d at 739-40 ("If the terms of a contract are unambiguous, a court is barred from considering any extrinsic evidence such as prior contemporaneous understand or agreements between the parties."). The language of the District Council No. 14 agreements unambiguously expresses the parties' intent for signatory employers like the defendant to comply with—and enforce—the collective bargaining agreements in "out-of-area" jurisdictions when the employer works

outside of District Council No. 14's geographic jurisdiction. In other words, the contracts evince an unambiguous intent to benefit third parties such as the plaintiffs—the "out-of-area" unions and their members.

Consequently, although the plaintiffs are not signatories to the FCAC and MWCC Agreements, the court concludes that they are third-party beneficiaries of those agreements and that they are entitled to enforce those contracts against the defendant, including the out-of-area provisions requiring the defendant to comply with the provisions of the Milwaukee-area Agreement when it was working on the St. Rita's project.

There is one more wrinkle. The plaintiffs are not asking the court to decide whether the defendant violated the Milwaukee-area Agreement's subcontracting provision. They are asking the court to compel the defendant to arbitrate the question of whether the defendant violated the Milwaukee-area Agreement's subcontracting provision, by asking the court to enforce the arbitration clause in the Milwaukee-area Agreement as to the defendant. Dkt. No. 1 at ¶24. "A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause." Zurich, 417 F.3d at 688 (citations omitted). But "caselaw consistently requires a *direct* benefit under the *contract containing an arbitration clause* before a reluctant party can be forced into arbitration." Id.

The defendant is the party reluctant to arbitrate. If the defendant knowingly sought the benefits of the contract containing the arbitration clause (the Milwaukee-area Agreement), it cannot avoid arbitration. But the contract

57

containing the arbitration clause—the Milwaukee-are Agreement—must confer a direct benefit on the defendant before the defendant can be forced into arbitration.

For reasons the court has discussed, it concludes that the Milwaukee-area Agreement conferred a direct benefit on the defendant, and that the defendant knowingly sought that benefit. The defendant knowingly and intentionally became party to two agreements which, despite its protests, unambiguously provide that when the defendant is working outside the jurisdiction of those agreements, it must abide by the lawful provisions of the collective bargaining agreement in effect in the out-of-area jurisdiction. Why would an employer bind itself to such a provision? So that, despite signing an agreement with the signatory unions, it is free to take work outside the jurisdiction of those unions without finding itself in violation of the collective bargaining agreement. A defendant signing an agreement containing an out-of-area clause is agreeing to comply with the terms and conditions of agreements it has not seen, reviewed or signed—agreements like the Milwaukee-area Agreement. It runs the risk that if it takes out-of-area work, it will find itself subject to provisions such as the arbitration agreement in the Milwaukee-area Agreement. It takes that risk in exchange for the reward of having the freedom to take out-of-area work. The defendant sought such a benefit when it signed the FCAC and MWCC Agreements, and its work on the out-of-area St. Rita project is an example of the benefit it sought. Having sought that benefit, it now is estopped from avoiding arbitration.

The court concludes that because the plaintiffs are third-party beneficiaries of the FCAC and MWCC Agreements, because that fact entitles them to enforce the out-of-area provisions of those contracts that required the defendant to comply with the Milwaukee-area Agreement and because the defendant sought the benefits of the Milwaukee-area Agreement when it became a party to the FCAC and MWCC Agreements, there is a valid agreement to arbitrate.

### b.    Scope of What May Be Submitted to Arbitration

Next, the court considers whether the dispute falls within the scope of what may be submitted to arbitration. The FCAC Agreement states that the Joint Trade Board "may decide all matters of disputes submitted hereunder which involve the interpretation, application, or adherence to the terms of this Agreement," excepting disputes under Article 6 (the Health and Welfare Fund), Article 7 (the Pension Fund) and Article 8 (the Deferred Savings Plan Fund). Dkt. No. 31-1 at 49. The MCWW Agreement is almost identical; it provides that the Joint Trade Board may "decide matters or disputes submitted hereunder which involve the interpretation, application, or adherence to the terms of this Agreement," excepting disputes under Articles 5 (Rates of Pay and Overtime), 7 (Pension Fund), 8 (Deferred Savings Plan) and 13 (Apprentices). Dkt. No. 28-2 at 43. The Milwaukee-area Agreement provides that the Joint Trade Board "is empowered to hear and decide all grievances and disputes which arise between the parties as to the interpretation or application of this Agreement . . . ." Dkt. No. 26-1 at 13. The language in all three agreements is broad, and the

59

language in the Milwaukee-area Agreement is broad enough to encompass the parties' dispute regarding whether the defendant violated the Article 24 subcontracting provision of that agreement.

The defendant argues, however, that the subcontracting provision of the Milwaukee-area Agreement is unenforceable under §8(e) of the National Labor Relations Act. Dkt. No. 22 at 29. The plaintiffs respond that all the dispute, "including Defendant's contention that [a] portion of the agreement may be unlawful," must be resolved by an arbitrator. Dkt. No. 36 at 26. Nonetheless, the plaintiffs go on to argue that the "construction industry proviso" of §8(e) applies to the subcontracting clause. Id. at 26-28. The defendant replies that the plaintiffs rely on McKinstry to "resolve the conflict between Section 8(e) of the National Labor Relations Act and their attempt to enforce the subcontracting restrictions in the Milwaukee-area Agreement against Defendant," and it asserts that this reliance is not persuasive because of "the national negotiation and framework behind the collective bargaining agreement between the parties in McKinstry." Dkt. No. 42 at 15.

"[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." AT&T, 475 U.S. at 649.

> Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is a particular language in the written instrument which will support the claim.

60

The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." [*Steelworkers v.*] *American Mfg. Co.*, 363 U.S. [564], at 568 [. . . (1960)] (footnote omitted).

Id. at 649-650.

In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006), the Court discussed the difference between two types of challenges to the validity of arbitration agreements: "[o]ne type challenges the validity of the agreement to arbitrate" and "the other challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . , or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." (citations omitted). The Court recounted that in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967), it had concluded that the language of the Federal Arbitration Act did not allow a federal court "to consider claims of fraud in the inducement of the contract generally." Id. at 445. It summarized that holding this way: "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Id. at 445-446.

The defendant's briefs do not acknowledge these directives. The defendant simply states that the subcontracting provision that the plaintiffs allege it violated is unlawful under §8(e). It acknowledges that there is a "construction industry proviso" in §8(e), then discusses in detail the Supreme Court's interpretation of that proviso in Connell Constr. Co., Inc. v. Plumbers and Steamfitters Local Union No. 100, 421 U.S. 616 (1975). Dkt. No. 22 at 30. It discussed two other cases in which the NLRB had followed the Connell

61

decision. Id. at 31. It then argues that the subcontracting provision in the Milwaukee-area Agreement is distinguishable from subcontracting provisions that the NLRB has concluded did not violate §8(e). Id. at 31-32.

The defendant has not addressed the court's ability to decide its §8(e) argument in the event that the court decided the dispute was subject to arbitration. It has not addressed the Supreme Court's admonitions that when a court has determined that a dispute subject to arbitration, the court must not address the merits of that dispute. If the defendant intended the court to consider the §8(e) argument only if the court determined that the parties' dispute was not subject to arbitration, it did not say as much in its summary judgment briefs. And in its brief in opposition to the plaintiffs' summary judgment motion, the defendant argued that the plaintiffs' summary judgment motion must fail, not just because the defendant was not subject to the subcontracting provision of the Milwaukee-area Agreement, but "also because application of the subcontracting clause to require [the defendant] to hire District Council No. 7 members only renders that restriction . . . illegal . . . under the National Labor Relations Act ('NLRA')." Dkt. No. 34 at 29.

Had the defendant raised any other substantive challenge to the subcontracting clause, the court would not hesitate to conclude that it was prohibited from addressing the merits of that challenge. The court hesitates here only because the defendant alleges that the subcontracting provision violates federal law—but it does not hesitate long.

62

In <u>Kaiser Steel Corp. v. Mullins</u>, 455 U.S. 72, 83 (1982), the Supreme Court observed that generally, federal courts "do not have jurisdiction over activity which 'is arguably subject to § 7 or § 8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" (quoting <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 235, 245 (1959)). In the next sentence, however, the Court stated that despite that general rule, "a federal court has a duty to determine whether a contract violates federal law before enforcing it." <u>Id.</u> This court is not deciding whether to enforce the subcontracting provision of the Milwaukee-area Agreement. It has decided that the parties' dispute over whether the defendant violated that provision—which would include the question of whether the provision is lawful—must go to arbitration. It is the province of the arbitrator, not the court, to decide whether the subcontracting provision violates §8(e).

The Ninth Circuit addressed the question of whether a party's allegation that a contract provision violates the NLRA prevents a district court from compelling arbitration of a dispute arising under the allegedly unlawful provision. In <u>United Food & Commercial Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119, 1179 & 1532, by United Food & Commercial Workers Int'l Union, AFL-CIO v. Alpha Beta Co.</u> that court recognized "that a court cannot compel arbitration if a contract clause on its face violates federal labor law or is contrary to federal labor policy." 736 F.2d 1371, 1376 (9th Cir.

1984),[5] (citing <u>W.R. Grace & Co. v. Local Union 759</u>, 461 U.S. 757 (1983);

<u>Kaiser</u>, 455 U.S. at 77). But the Ninth Circuit concluded that

> a conflict between an arbitrator's decision and federal labor law "is
> necessarily speculative when the arbitrator has yet to rule." *Hospital
> & Institutional Workers Union Local 250 v. Marshal Hale Memorial
> Hospital*, 647 F.2d 38, 42 (9th Cir. 1981); *see Carey v. Westinghouse
> Electric Corp.*, 375 U.S. 261, 272 . . . (1964). Such conflicts "can be
> resolved when they become manifest in an action to enforce the
> award. The mere possibility of conflict, however, is no barrier to
> arbitration." *Hospital & Institutional Workers*, 647 F.2d at 42 (citing
> *Carey v. Westinghouse Electric Corp.*, 375 U.S. at 272 . . .).

<u>Id.</u> The Ninth Circuit held that it needed only to determine whether "an

arbitrator could interpret the disputed contract clause in a manner that would

render it unlawful," and that "only if all possible interpretations of the contract

provision would result in a conflict between that provision and [the union

members'] rights would be precluded." <u>Id.</u> at 1377.

On its face, the subcontracting clause in the Milwaukee-area Agreement

does not violate federal labor law or policy. The subcontracting clause appears

in Article 24, Section 1:

> Section 1. The Employer shall not contract out, subcontract, or
> outsource work to be done at the site of the construction, alteration,
> painting, or repair of a building or structure or other work unless
> the Employer or person who will perform such work is a party to a
> Collective Bargaining Agreement with this Union or another Union
> affiliated with the IUPAT.

Dkt. No. 30-3 at 26.

---

[5] Seventh Circuit judge Luther Swygert sat on Ninth Circuit panel by
designation.

64

Section 8(e) prohibits unions and employers from entering into agreements that restrain trade:

> It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [sic] and void . . . .

29 U.S.C. §158(e). The construction industry proviso states:

> Provided, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work . . . .

Id.

On its face, the subcontracting provision of the Milwaukee-area agreement falls within the construction industry proviso: it is an agreement between a labor union (the plaintiffs) and employers (the Wisconsin Painting Contractors' Association and the Southeastern Wisconsin Drywall Contractors' Association) in the construction industry, and it relates to contracting or subcontracting of work to be done onsite: "The Employer shall not contract out, subcontract, or outsource *work to be done at the site of the construction*, alteration, painting, or repair of a building or structure or other work unless the Employer or person who will perform such work is a party to a Collective Bargaining Agreement with this Union or another Union affiliated with the IUPAT."

65

The court's decision that the dispute is subject to arbitration prohibits the court from deciding the defendant's claim that the subcontracting provision of the Milwaukee-area Agreement is invalid. The parties' dispute over whether the defendant violated that provision—including whether the provision violates §8(e)—falls within the scope of the Milwaukee-area Agreement's arbitration provision.

c.    *Refusal to Arbitrate*

The third and final requirement that must be met to allow a court to compel arbitration is the refusal to arbitrate. The record is clear that the defendant has refused to arbitrate this dispute. The Senior Vice President and General Counsel responded to the plaintiffs' letters by stating the defendant's position that it is not subject to the "Local 7's contract" and the defendant had complied in all respects with the District Council No. 14 agreement. Dkt. No. 30-12 at 3. The defendant's opposition to the plaintiffs' complaint, through its filing of a motion for summary judgment and its opposition to the plaintiffs' motion for summary judgment, confirms that its refusal to arbitrate.

F.    <u>Conclusion</u>

Section 3 of the Federal Arbitration Act requires that when a court is satisfied that the issue involved in a lawsuit is referable to arbitration under an agreement, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. §3.

66

Because the court has concluded that the parties' dispute is subject to arbitration, it will stay the case and administratively close it. Either party may move to reopen if circumstances require.

## III. Conclusion

The court **DENIES** the defendant's motion for leave to file sur-reply in opposition to plaintiffs' motion for summary judgment. Dkt. No. 49.

The court **DENIES** the defendant's motion for summary judgment. Dkt. No. 21.

The court **GRANTS** the plaintiffs' motion for summary judgment. Dkt. No. 23. The court **ORDERS** that the defendant submit to a hearing on the merits before the Joint Trade Board.

The court **ORDERS** that this case is **STAYED** pending arbitration.

The court **ORDERS** the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case without prejudice to the parties' ability to file a motion to reopen.

Dated in Milwaukee, Wisconsin this 30th day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**